UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MUTAZ M. ABUSHAWISH, and
MHAMMAD A. ABU-SHAWISH

        Plaintiffs,

                              Case No.:  20-CV-1914

v.

MILWAUKEE COUNTY,
DANIEL O. HUMPHREYS,
MICHAEL GALEZEWSKI, and
EARNELL LUCAS

Defendants.

## PLAINTIFFS', MUTAZ ABUSHAWISH AND MHAMMAD ABU-SHAWISH, MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

      The plaintiffs, Mutaz M. Abushawish and Mhammad A. Abu-Shawish, by and through their attorneys, Martin Law Office, S.C., respectfully submit the following Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment. For the reasons outlined, the defendants' motion for summary judgment should be denied.

### **<u>INTRODUCTION</u>**

      "Please man, it's somebody's wedding!" (PPFF at ¶ 122.) Mutaz Abushawish begged Milwaukee County Sheriff's Office Deputies, Michael Galezewski and Daniel Humphreys to let him remove his rental van and bring it to his father's wedding. The clearly established law and department policies required Galezewski and Humphreys to release the van, but they refused. And when Abushawish kept begging, they arrested him.

      The two key ingredients for the violation of the plaintiffs' rights were ignorance and indifference. As will be discussed, the defendants were ignorant of the law and their

department's policies and procedures. To take Galezewski at his initial word, the violations were set in motion because Galezewski saw himself entitled to seize an innocent man's property to punish him for violating a private rental agreement. This is not a lawful seizure. Milwaukee County Sheriff's Office had in place a written policy, that if followed, would have prevented the violations that occurred. However, Galezewski and Humphreys appear unfamiliar with the written policy. Galezewski and Humphreys understood the ramifications of seizing the plaintiffs' property. They knew that Abushawish was desperate for the van because it was heading to his father's wedding. Galezewski and Humphreys arrested Abushawish because he continued to beg them not to seize the van. The decision to seize the van and arrest Abushawish displayed an utter impatience and indifference to the plaintiffs' rights.

The parties filed cross motions for summary judgment supported by separate proposed findings of fact. (See Pl. Br. Doc. 20; Def Br. Doc. 14).[1] The undisputed facts entitle the plaintiffs to summary judgment as to their claims against Deputies Galezewski and Humphreys. Summary Judgment as to the *Monell* and punitive damage claims is unwarranted because disputed issues of fact remain as to these issues. However, the plaintiffs do not object to the dismissal of Sheriff Earnell Lucas or the Equal Protection claim.

## ARGUMENT

### I.    Standard of Review:

Both parties have briefed the standard of review applicable to summary judgment. (See Pl. Br., Doc. 20, pp. 13-14; Def. Br., Doc. 14, pp. 2-3.) Having an opportunity now to review the defendants' proposed findings of fact, and noting the disputes between the parties, the plaintiffs

---

[1] The plaintiffs will refer to their proposed findings of fact throughout this memorandum of law as "PPFF." The plaintiffs will further refer to their responses to the defendants' proposed findings of fact throughout this memorandum of law as "R. to DPFF."

believe it is worth reiterating that the key incidents and interactions were captured on video. Throughout the defendants' brief they paint a very different picture of the encounter on April 27, 2019 than what is depicted in the video. As discussed, *infra*, this is fatal to the defendants' various arguments for summary judgment. Although the parties dispute the inferences to be drawn from the material facts, the court is in a position to resolve those disputes based on the video evidence. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

## II. Mutaz Abushawish Was Wrongfully Arrested As A Matter of Law.

A. *Deputy Galezewski Participated in the Unconstitutional Arrest of Abushawish.*

As an initial argument, Galezewski incorrectly states that he is not be liable for Abushawish's arrest because did not make the initial decision to arrest Abushawish. (*See* Def. Br., Doc. 14, at pp. 3-5) ("Deputy Galezewski Was Not Personally Involved in the Decision to Arrest Mutaz.") "Section 1983 creates a cause of action based upon personal liability and predicated upon fault." *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994). Thus, for an officer to be liable, he must share personal constitutional violation. *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2011). An officer is personally responsible under two scenarios: he either caused or he participated in the constitutional deprivation. *Id.; see also Starzenski v. City of Elkhart*, 87 F.3d 872, 879 (7th Cir. 1996). At issue here is an unconstitutional arrest. An arrest occurs within the meaning of the Fourth Amendment when, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Jenkins v.* Keating, 147 F.3d 577, 583 (7th Cir. 1998) (citing *United States v. Mendenhall*, 446 U.S. 544, 544, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980)). An officer is liable for an unconstitutional arrest if he either directed the arrest to occur or participated in carrying it out. *See Jenkins v. Keating*, 147 F.3d 577 at 583. An officer does

3

not need to be present at every stage of an unlawful arrest to have participated in the arrest. *See Brunner v. McKillip*, 488 F. Supp. 2d 775, 785 (W.D. Wis. 2007).

Galezewski's attempt to escape liability fails because he participated in arresting Abushawish. Galezewski was not an idle or hands-off observer during Abushawish's arrest. The undisputed evidence shows that, as Humphreys walked Abushawish to Galezewski's squad car, Galezewski grabbed Abushawish's arm and assisted Deputy Humphreys in securing handcuffs around Abushawish's wrists. (DeVinney Decl., Ex. 1 at 13:58-14:30; R to DPFF at ¶ 54.) As he helped restrain Abushawish, Galezewski reprimanded him, telling him he had been warned by two different officers. (DeVinney Decl. Ex. 1 at 13:58-14:30.) Although Humphreys made the initial decision to arrest Abushawish, Galezewski helped carry out the arrest. In choosing to actively participate in the unlawful seizure of innocent citizen, Galezewski shares responsibility for his role in the arrest.

      B.    *There Was No Probable Cause to Arrest Abushawish.*

          1.    There Was No Probable Cause to Arrest Mutaz Abushawish for Obstructing an Officer.

The defendants argue that Galezewski and Humphreys had probable cause to arrest Abushawish for obstructing an officer. (Def Br., Doc. 14, at p. 7.) The parties' respective summary judgment motions are diametrically opposed on this issue. The defendants motion fails for two reasons. First, the defendants frame the actions of Galezewski and Humphreys as "lawfully carrying out" a "valid" stop and arrest. (*See* Def. Br., Doc. 14, at p. 7.) The defendants' motion mistakenly assumes that, because the stop and arrest of Navarro was lawful, Galezewski and Humphreys acted lawfully *in toto*. They did not. (*See* Pl. Br. Doc. 20, pp. 21-26.) (addressing the unlawfulness of the seizure and search of the rental van). Second, the defendants draw

4

unreasonable and unsupported inferences from the record to mischaracterize Abushawish's motivation and behavior at the time of the arrest.

> a. *Galezewski and Humphreys Were Not Acting "Lawfully" at the Time of Abushawish's Arrest.*

The three elements of resisting or obstructing an officer are that the person knowingly (1) obstructed an officer; (2) while the officer was doing any act in official capacity; and (3) that the officer was acting with lawful authority. *State v. Delap*, 2018 WI 64, ¶¶ 53-54, 382 Wis. 2d 92, 913 N.W.2d 175. There was no probable cause to arrest Abushawish for wont of the third element, lawful authority. (See Pl. Br. Doc. 20, pp. 21-26.) An officer acts with lawful authority when his actions are in accordance with the law. *State v. Ferguson*, 2009 WI 50, ¶¶ 14-17, 767 N.W.2d 187. An act that is unconstitutional is not lawful. *Id.* at ¶ 14 (*citing Segura v. United States*, 468 U.S. 796, 829 (1984)). As discussed in the plaintiffs' previous brief, Galezewski's decision to tow the U-Haul van and Humphrey's subsequent decision to search the van were both unlawful violations of Abushawish's Fourth Amendment rights. (*See* Pl. Br. Doc. 20, pp. 21-26.) Therefore, Galezewski were not acting lawfully, regardless of whether the separate and distinct decisions to stop and arrest Navarro were proper. Thus, regardless of the validity of the stop and arrest, there was no probable cause to arrest Abushawish for protesting the seizure of his property.

> b. *Abushawish Did Not "Knowingly" Obstruct the Stop and Arrest of Navarro Under Any View of the Evidence.*

In the plaintiffs' motion for summary judgment, the plaintiffs did not dispute that there was probable cause that he acted to obstruct the defendants. (Pl. Br., Doc. 20, at p. 21.) However, some limit to that concession is necessary in light of the defendants' mischaracterization of the evidence. The plaintiffs do not dispute that Abushawish intended to stop Galezewski and

Humphreys from impounding the vehicle. Thus, assuming arguendo that the seizure of the vehicle was lawful, there would be probable cause for a resisting charge. However, the defendants characterize Abushawish's motivation as intending to interfere with the stop and arrest of Navarro. The undisputed evidence, let alone a view more favorable to Abushawish, does not support this characterization. The plaintiffs ***do not concede*** that there was probable cause to believe that Abushawish knowingly intended to obstruct the stop and arrest of Navarro.

This issue goes to the offending conduct of a resisting charge: "***knowingly*** resist, obstruct, hinder or in any way interfere with…" Milwaukee County Mun. Code § 63.05(2) (emphasis added). The inclusion of the word "knowingly" creates a subjective "belief requirement." *State v. Lossman*, 118 Wis. 2d 526, 536, 343 N.W.2d 159 (1984). In other words, the "accused must believe or know" that he is committing each of the three resisting elements. *Id*. In order to find probable cause for obstruction, "the defendant's subjective intent must be ascertained, based on the totality of the circumstances, including what the defendant said or did, what the officer said or did, and any objective evidence which is available." *See id.*, at 543. The totality of the circumstances presented here does not support a finding that Abushawish had subjective intent to "knowingly resist, obstruct, hinder, or interfere" with either the stop or arrest of Navarro.

Galezewski testified that Abushawish was singularly concerned with the van, not Navarro. (PPFF at ¶ 123.) Humphreys, too, testified that the reason he arrested Abushawish was because Abushawish was interfering with his ability to inventory the van. (Id. at ¶ 120; R to DPFF at ¶ 57.) In Galezewski's video Abushawish only expresses concern with securing the van for the wedding, never addressing Navarro. (*See* DeVinney Decl., Ex. 1.) Abushawish went so far as to offer Galezewski to tow his personal vehicle. (PPFF at ¶ 78.) At his deposition,

Abushawish testified that he told the officers that they could take Navarro, stating: "that has nothing to do with me or the van. I'm here for the van, not for Mario." (DeVinney Decl., Ex. 3., Abushawish Dep. at 32: 13-15.) The undisputed evidence shows that Abushawish had no subjective intent to interfere with the stop and arrest of Navarro. To the contrary, his subjective intent was ***not*** to interfere with Navarro's arrest. Because Abushawish did not "knowingly resist, obstruct, hinder, or interfere" with the stop and arrest, there was no probable cause to believe he committed an arrestable offense simply for continuing to beg for his property.

The defendants further mischaracterize Abushawish as defiant to lawful orders. The undisputed video shows otherwise. Abushawish promptly complied with each order given to him during this very brief encounter. The defendants first claim that Abushawish disobeyed Galezewski's repeated instructions to sit in his car. (Def. Br., Doc. 14, at p. 7.) However, Galezewski's video shows that Abushawish walked patiently with Galezewski back to his car, without any resistance or refusal. (DeVinney Decl., Ex. 1 at 10:20-11:00.) Abushawish remained calm as he tried to reason with Galezewski who was refusing to release the van because he apparently believed that Abushawish had violated a U-Haul rental contract. (Id. at 9:45-11:14.) Abushawish, nevertheless, did as he was told and sat in his car. (Id.) A reasonable officer would not believe that Abushawish was "knowingly" obstructing or hindering Galezewski's traffic stop during this initial interaction. Next, the defendants claim that Abushawish refused to comply when Galezewski and Humphrey's ordered him to remove his car from the scene. However, the video shows that Abushawish almost immediately agreed that he would remove his vehicle and pulled away within 45 seconds of Humphreys' first instruction. (Id. at 11:11-11:52.) Again, this is not conduct constituting knowing resistance under any reasonable view of the facts. Finally, the defendants argue that Abushawish disobeyed their orders by returning to the side of the road

after parking his vehicle. However, the warning given to Abushawish was that he needed to remove his vehicle from the side of the road, which he did. (*See id*.) Regardless, Abushawish's return to the scene did not constitute a knowing obstruction of the traffic stop or arrest. Humphreys and Galezewski agreed that Navarro had already been arrested when Abushawish returned. (PPFF at ¶ 104; R. to DPFF at ¶ 43.) Abushawish walked straight toward Humphreys, who was conducting the inventory search. (Id. at ¶ 117; R to DPFF at ¶ 47.) He did not walk toward Navarro or address Galezewski. (PPFF at ¶ 118; R to DPFF at ¶ 47.) Humphreys testified that he arrested Abushawish specifically because his presence was interfering with the unlawful inventory. (PPFF at ¶120; R to DPFF at ¶ 47.) And, after he was arrested, Abushawish reiterated that his concern was getting the van to the wedding, stating "Please man, it's somebody's wedding!" (Id. at ¶ 122.) No reasonable officer would believe that Abushawish returned to the scene with the subjective intent to "knowingly resist, obstruct, hinder, or interfere" with the arrest of Navarro, which had already been completed. Abushawish simply wanted to prevent his father's wedding from being ruined and was doing the best he could to navigate the situation he was thrust into by Galezewski and Humphreys. Accordingly, the Court should deny the defendants' motion for summary judgment.

2.    There Was No Probable Cause to Arrest Abushawish for Disorderly Conduct.

The defendants make a passing reference in their brief to Milwaukee County Mun. Code 63.01, which is Milwaukee County's disorderly conduct ordinance. (Def. Br., Doc. 14, at pp. 5, 10.) ("Humphreys undisputedly had probable cause to arrest Mutaz for disorderly conduct and resisting.") This undeveloped argument should be considered waived. It is not the obligation of the Court "to research and construct legal arguments open to parties, especially when they are represented by counsel." *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010). Further,

"perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *Id.* (citing *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003)).

Nevertheless, there was no probable cause to arrest Abushawish for disorderly conduct. To arrest a person for disorderly conduct, an officer must have probable cause to believe the person (1) engaged in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct and (2) the conduct, under the circumstances as they then existed, tended to cause or provoke a disturbance. Wisconsin JI – Criminal 1900 (2018).

Abushawish's repeated requests that Galezewski and Humphreys not ruin his father's wedding did not amount to the type of conduct sufficient to trigger an arrest for disorderly conduct. Although the argument is undeveloped, the defendants seem to suggest that Abushawish acted criminally because he used a profane word. (Def. Br., Doc. 14, at p. 13.) ("[A]nd [he] even used profanities.") To be clear, in response to Galezewski raising his voice, Abushawish said: "Don't fucking yell at me, bro." (PPFF at ¶ 81; R to DPFF at ¶ 17.) This is not disorderly conduct. It is clearly established in Wisconsin that "the use of profanity alone is not enough to sustain a charge for disorderly conduct." *State v. Breitzman*, 2017 WI 100, 378 Wis. 2d 431, 904 N.W. 2d 93. While profanity may in limited circumstances satisfy the first element of disorderly conduct, "it does not likely satisfy the second element," which is conduct that tends to cause or provoke a disturbance. *See id.* To satisfy probable cause there must exist the "real possibility that the disturbance or disruption will spill over and disrupt the peace, order or safety of the surrounding community as well." *State v. Schwebke*, 2002 WI 55, 253 Wis. 2d 1, 644 N.W.2d 666. Here, no reasonable officer would believe that use of a single expletive had the tendency to disrupt the "peace, order, or safety" of the surrounding community.

The defendants seem to argue that Abushawish's "interferences" with the stop and arrest of Navarro constitute disorderly conduct. Even under the defendants' misconstrued version of the facts, noncompliance is not grounds for a disorderly conduct arrest. "The mere refusal to obey a police command does not ordinarily … constitute disorderly conduct." *City of Oak Creek v. King*, 148 Wis. 2d 532, 436 N.W.2d 285 (1989). As the Wisconsin Supreme Court has held, "[t]o hold without limitation that any violation of a police command, whether or not lawful, constitutes disorderly conduct would be patently violative of the fourteenth amendment." *Id.* Disobedience to a lawful order is disorderly only when the disobedience has the tendency to disrupt the "peace, order or safety" of the surrounding community. *See id.* (holding that a defendant's disobedience to a lawful order to stay away from the site of an airplane crash in order to allow for access by emergency personnel was disorderly conduct that satisfies the second element.) Disobedient conduct that tends to only cause personal annoyance to an officer does not satisfy the second element. S*ee State v. Douglas D.*, 2001 WI 47, ¶ 27, 626 N.W.2d 725, 243 Wis. 2d 204.

The undisputed evidence shows that there was no one else in the vicinity of the scene besides Abushawish, Humphreys, Galezewski, and Navarro. There was no pressing public emergency or threat to safety. Abushawish cooperated with the orders given to him, and he maintained a measured demeanor throughout, including after his arrest. Abushawish's repeated requests for the van may have annoyed Humphreys and Galezewski, but that does render his requests disorderly. No reasonable officer would have found probable cause to arrest Abushawish for disorderly conduct.

### III. Mutaz Abushawish and Mhammad Abu-Shawish's Property Was Wrongfully Seized as a Matter of Law.

#### A. *Deputy Humphreys Was Personally Involved in the Decision to Seize the Property.*

As outlined above, to be liable for a constitutional violation, an officer need only have participated in the unlawful conduct. *See Starzenski v. City of Elkhart*, 87 F.3d 872, 879 (7th Cir. 1996). Here, while Galezewski decided to call the tow truck to remove the U-Haul, Humphreys participated in the seizure. (R to DPFF at ¶¶ 66-67.) Humphreys arrived as Abushawish was pleading with Galezewski for the van. (Navarro was still in the van and it had not been impounded). (PPFF at ¶ 90; R to DPFF at ¶ 30.) Abushawish made multiple requests to Humphreys for the van, which he denied. (PPFF at ¶ 119.) Although Humphreys did not recall Abushawish's specific requests, he testified that he would not have permitted Abushawish to remove the van or to arrange for its removal. (DeVinney Decl. Ex. 6, Humphreys Dep. at 41:24-25, 42:1-2.) As part of the impoundment procedure, Milwaukee County requires an inventory be performed, which Humphreys performed. (DeVinney Decl., ¶ 9, Ex. 8, Milwaukee County Sheriff's Office's policy and procedure number 501.31, relative to towing, at 501.31.19.) He would not have performed an inventory unless the vehicle was being towed. (DeVinney Decl. Ex. 6, Humphreys Dep. at 32:9-19.) Humphreys testified that he arrested Abushawish to stop Abushawish from interfering with the inventory. (PPFF at ¶120; DPFF at ¶ 57.) Although Galezewski called for tow, Humphreys actively participated in the seizure of the van by denying its release to Abushawish prior to the tow arriving and by conducting the unlawful inventory pursuant to the impoundment. Thus, Humphreys has personal liability for his role in the unlawful seizure of the plaintiffs' property.

B.      *Abushawish and Abu-Shawish's Fourth Amendment Rights Were Violated When the U-Haul Van Was Searched and Impounded by the Deputies.*

The unlawfulness of the seizure and search of the U-Haul van were addressed in detail in plaintiffs' summary judgment brief. (Pl. Br., Doc. 20, at p. 16-20.) Responding to the present motion, the defendants argue that the seizure was lawful under the "community caretaker" function because there was "no licensed driver […] available to remove the vehicle." (Def. Br., Doc. 14, at p. 12.) The defendants' argument is contradicted by existing case law, unsupported by department policy, and misstates the testimony and evidence in this. As addressed in the plaintiffs' brief, the seizure of the U-Haul van was unlawful because Abushawish was present at the time of the arrest to remove the vehicle. (See Pl. Br., Doc. 20, at p. 22-25.)

1.      There Was No Community Caretaker Justification for Seizing U-Haul Van.

The defendants argue that the seizure of the vehicle was done pursuant to law enforcement's "community caretaker" functions. (*See* Def. Br., Doc. 14, at p. 11-12.) Wisconsin recognizes five community caretaker justifications for vehicle impoundments. *See State v. Clark*, 2003 WI App 121, 265 Wis. 2d 557, 666 N.W.2d 112. No community caretaker rationale exists for the impoundment of a parked vehicle that was not: "(1) involved in accident; (2) interrupting the flow of traffic; (3) disabled or damaged; (4) violating parking ordinances; or (5) in any way jeopardizing the public safety or the efficient movement of vehicular traffic." Id. at ¶ 22. Galezewski testified that none of these factors existed in this case. (*See* PPFF at 134-135.) The van was not involved in an accident. It was pulled off the roadway so as not to interrupt traffic. It was neither disabled, nor damaged. It was not violating any parking ordinance. And, finally, it was not jeopardizing public safety or efficient movement of traffic. Therefore, no community caretaker rationale existed to impound the van at the time of the stop. Even if some of these

12

factors did exist in this case, seizure of the van would not be justified under the community caretaker rationale because the van was not "unattended" and Abushawish was available to "immediately take possession" of the vehicle. *See State v. Ashbosh*, 2017 WI 76, ¶¶ 32 & 35, 376 Wis. 2d 644, 898 N.W.2d 541.

> 2.    The Defendants Cite to No Policy or Case Permitting A Seizure Under These Circumstances.

In assessing whether a seizure is appropriate for community caretaker purposes, one factor is whether the seizure complied with the policies of the law enforcement agency. *State v. Asboth*, 2017 WI 76, ¶ 33. The seizure in this case violated MCSO's tow policy, § 501.31.19. (*See* Pl. Br., Doc. 20, pp. 3-5, 20.) The defendants avoid citing MCSO's written tow policy. (*See* Def. Br., Doc. 14, *passim*). The department's relevant tow policy reads:

**501.31.19 Arrest Tow**

It shall be the policy of this agency to tow any vehicle when the driver and/or owner is arrested and no responsible person is present, at the time of the arrest, to take control of the vehicle.

Procedure:

- The vehicle will be towed by a contracted towing agency.
- The owner of the vehicle, if arrested, may give a licensed driver permission to drive his/her vehicle from the scene of the arrest. In that case, the vehicle need not be towed. The arrest report will list who removed the vehicle. The person taking control of the vehicle must be at the scene prior to the tow arriving.
- Before removing an arrestee from the scene, ask them if the vehicle contains any items of value. Include this information in a separate paragraph of your arrest report. Inventory items consistent with division and agency policy.
- Officers will search all vehicles prior to being towed.
- If a vehicle is towed, the ignition key will go with the vehicle.

(PPFF at ¶ 8.)

13

First, the defendants misleadingly state that the seizure of the van was mandated by department policy because Galezewski called for the tow before Abushawish arrived at the scene. (Def. Br., Doc. 14, at p. 12.) This misstates the policy. Pursuant to § 501.31.19, a vehicle will not be seized if the person removing the vehicle is "***at the scene prior to the tow arriving***." (DeVinney Decl., ¶ 9, Ex. 8, Milwaukee County Sheriff's Office's policy and procedure number 501.31, relative to towing, at 501.31.19.) (emphasis added.) Under the department policy, Abushawish needed to be at the scene before the tow, not before the call for the tow. There is no dispute that Abushawish arrived before the tow. Thus, Galezewski and Humphrey's refusal to call off the tow violated department policy.

The defendants further attempt to muddy the scope of the policy by replacing the word "arrest" in § 501.31.19 with the word "stop." (Def. Br., Doc. 14, at p. 12) ("Deputy Galezewski was following the Milwaukee County Sheriff's Department practice that, at the time, was to tow a vehicle if there was no licensed driver available at the time of the stop to drive the vehicle away from the scene.") There was no unwritten policy that required a seizure if there was no one was present at the time of a traffic stop to remove the vehicle. (PPFF at ¶ 2.) This is contrary to the defendants' own expert, Captain Sarah Wronski, who testified that MCSO did not have any unwritten policies. (Id.). If the word "arrest" was replaced with the word "stop," MCSO policy § 501.31.19 would read, in pertinent part:

> It shall be the policy of this agency to tow when … no responsible person is present, at the time of the stop.
> …
>
> The owner of the vehicle, if "stopped," may give a licensed driver permission to drive his/her vehicle from the scene of the "stop." In that case, the vehicle need not be towed. … The person taking control of the vehicle must be at the scene prior to the tow arriving.

14

(*See* PPFF ¶ 8.) Assuming, arguendo, that there was a policy and procedure for stops, the seizure in this case would still violate department policy for two reasons. First, there can be no dispute that Abushawish was at the scene at the time of the stop. The stop was ongoing when Abushawish arrived. Galezewski was still sitting in his squad car and Navarro was waiting in the running U-Haul van. Navarro had not been issued any citations and had not been taken into custody. Second, regardless of whether there was a separate stop policy, the stop in this case became an arrest. Once Galezewski decided to arrest Navarro, the written "Arrest Tow" policy would have applied and would have required the release of the van to Abushawish. The defendants ignore § 501.31.19, for good reason. The seizure in this case violated department the policy.

In arguing that the tow was lawful under the community caretaker rationale, the defendants cite three irrelevant and unpersuasive cases, including two per curium orders (one of which cannot be cited). Regarding *Scott v. Archey*, 99 Fed.Appx. 62 (7th Cir. 2004), this was a nonprecedential disposition that was released before January 1, 2007, which cannot be cited or considered precedent in this circuit. 7th Cir. R. 32.1(b), (d)). The defendants also cite *Holm v. Village of Coal City*, 345 Fed.Appx. 187 (2009) (per curium), which is also a nonprecedential disposition, but released after January 1, 2007. 345 Fed.Appx. 187. *Holm* may be cited but does not constitute the law of the circuit. *See* 7th Cir. R. 32.1(b). In *Holm*, the plaintiff was stopped and arrested on two occasions while unlawfully driving his scooter. *Id.* In the first instance, the plaintiff called friends and family after he was stopped who came to the scene prior to his arrest and the scooter was not impounded. *Id.* In the second instance (unlike in this case) there was no licensed driver available to remove the scooter from the road, so it was impounded. *Id.* The Seventh Circuit held that the impoundment during the second arrest did not violate the Fourth

Amendment and was consistent with Illinois law, which required impoundment when a vehicle owner is "lacking both a license and insurance." *Id. Holm* has little resemblance to the facts in this case. If anything, *Holm* lends support to the plaintiffs' contention that the van was improperly seized. During Holm's first arrest, his family and friends arrived after the traffic stop but before the arrest and were permitted to remove the vehicle. This is what should have occurred Abushawish's this case. The third case is *US v. Balanow*, 528 F.2d 923, 924 (7th Cir. 1976). The factual record recited in *Balanow* is scant. *See Id.* at 924. Balanow was stopped for making an illegal lane change and was discovered to have had a suspended license. *Id.* Balanow was then arrested for driving without a license and his vehicle was impounded. *Id.* During the inventory search, officers discovered a sawed-off shot gun in Balanow's car. *Id.* The record does not establish anyone was available to remove Balanow's car and the court did not address that issue. *See id.* The Seventh Circuit noted that Indiana law—at least in 1974—permitted law enforcement to impound Balanow's car. *Id.* There are multiple differences between the present case and the seizures in *Balanow* and *Holm*. Abushawish was not under arrest at the time of the seizure. Abushawish was a licensed driver. Abushawish was present at the time of both the stop and the arrest of the driver. Finally, the seizure violated the department's written policy.

The defendants suggest that, if the policy did require release of the van to Abushawish once he arrived, Galezewski would have had no reason to change his mind about the seizure because Abushawish "did not attempt to explain who he was or what his purpose was." (*See* Def. Br., Doc. 12, pp. 13.) This is not a reasonable inference that can be drawn from the record. (*See* PPFF at ¶¶ 17, 44, 58, 61; DPFF at ¶ 14.) Galezewski testified that he believed Abushawish was the renter of the vehicle (making him the "owner" under department policy). (PPFF at ¶ 12.) Prior to Abushawish's arrival, Navarro had informed Galezewski that the person who rented the

16

van was on his way. (Id. at ¶ 44.) When Galezewski saw Abushawish arriving, Galezewski informed dispatch that he believed the two were travelling together. (Id. at ¶ 58.) Finally, when Abushawish approached Galezewski, he informed Galezewski that he was the person who had rented the van and that he had a wedding to bring it to. (Id. at ¶¶ 44, 61.) Galezewski testified that he had no reason to doubt that Abushawish was a licensed driver or the "responsible person" under the rental agreement. (Id. at ¶ 12.)

The defendants had in place a written policy that, if followed, would have prevented the violation of Abushawish and Abu-Shawish's constitutional rights. Instead, Galezewski and Humphreys apparent ignorance to the policy led to an unlawful seizure and subsequent arrest of an innocent person. Avoiding mention of the written policy altogether, the defendants endorse Galezewski and Humphreys' apparent ignorance, arguing that Galezewski and Humphreys were dutifully following some unwritten policy. The defendants ignore their own expert's testimony that MCSO did not have any unwritten tow policies. Even under the defendants' moving-target-policy, the seizure was nevertheless unlawful because Abushawish was at the scene at the time of the stop, which was ongoing. Furthermore, the stop eventually became an arrest, which brings this case full circle back under the real written arrest tow policy that required Galezewski and Humphreys to release the van to Abushawish. The defendants cite no case that supports the seizure of an innocent owner's vehicle under the circumstances in this case. For the reasons discussed herein, and more fully in the plaintiffs' previous brief, the seizure of Abushawish and Abu-Shawish's property was unlawful.

### IV. Plaintiffs are not Pursing an Equal Protection Claim.

The Plaintiffs are not pursuing an Equal Protection Claim and do not oppose the dismissal of this claim.

## V. Neither Deputy is Entitled to Qualified Immunity.

Qualified immunity shields officials from civil liability if the conduct does not violate clearly established statutory rights of which a reasonable officer would have known. *Gill v. City of Milwaukee*, 850 F.3d 335, 340 (7th Cir. 2017). Qualified immunity looks to two questions: (1) whether the facts, taken in the light most favorable to the plaintiff, constitute a violation of a constitutional right, and (2) whether that right was clearly established at the time of the violation. *Id.* The Court has the discretion to choose which question to address first. *Id.* "When looking at closely analogous cases to determine if a right was clearly established at the time of the violation, we first look to controlling precedent on the issue from the Supreme Court and to precedent from this Circuit." *Estate of Escobedo v. Bender*, 600 F.3d 770, 781 (7th Cir. 2010). Qualified immunity is not intended to protect the "plainly incompetent" or the those who knowingly violate the law." *City and County of San Francisco, Calif v. Sheehan*, 135 S. Ct. 1765, 1774 (2015).

Law enforcement officials are entitled to qualified immunity as long as a reasonable official would have believed that their actions were lawful. *City and County of San Francisco, Calif v. Sheehan*, 135 S. Ct. 1765, 1774, 575 U.S. 600 (2015). To prove that a right was clearly established, the plaintiff must show that the unlawfulness of the defendant's conduct was apparent in light of preexisting law. *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987). "The relevant, dispositive inquiry in determining whether the right is clearly established is whether or not it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Purtell v. Mason*, 527 F.3d 615, 621 (7th Cir. 2008) (internal quotation marks omitted).

18

Qualified immunity is defeated by the showing of a "reasonably analogous case that has both articulated the right at issue and applied it to a factual circumstance similar to the one at hand." *Leiser v. Kloth*, 933 F.3d 696 (7th Cir. 2019). This does not mean the plaintiff need find a case "on all fours." *Id.* (citing Howell v. Smith, 853 F.3d 892, 897 (7th Cir. 2017).

Qualified immunity protects officers who make a reasonable error in deciding to arrest. *McComas v. Brickley*, 673 F.3d 722, 727 (7th Cir. 2012). It shields an officer "if 'a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed.'" *Abbot v. Sangamon County,* 705 F.3d 706, 714 (7th Cir. 2013) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam)). In a false arrest claim, law enforcement officers are granted qualified immunity when they have arguable probable cause. *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015). Arguable probable cause exists if "a reasonable officer could have mistakenly believed that probable cause existed." *Id.* quoting *Fleming v. Livingston County, Ill.*, 674 F.3d 874, 875, 880 (7th Cir. 2012). Therefore, if an officer "reasonably but mistakenly" believes there is probable cause and makes an arrest, he or she is entitled to qualified immunity. *See id*. The existence of arguable probable cause depends on the elements of the criminal offenses. *Abbot v. Sangamon County,* 705 F.3d 706, 174.

A.    *The Plaintiff's Rights Were Clearly Established.*

It was clearly established at the time of this incident, through "reasonably analogous" case law, that the seizure of the rental van was an unlawful violation of the plaintiffs' Fourth Amendment rights. *See* (Pl. Br., Doc. 20, pp. 16-20) (citing *US v. Duguay*, 93 F.3d 346, 352 (7th Cir. 1996; *State v. Clark*. 2003 WI App 121, 265 Wis. 2d 557, 666 N.W.2d 112; and *State v. Asboth*, 2017 WI 76.) It was also clearly established that a person cannot be arrested for resisting

or obstruction while an officer is violating their Fourth Amendment rights. *See State v.* Ferguson, 2009 WI 50, ¶¶ 14-17, 767 N.W.2d 187. A reasonable officer, therefore, would not have found probable cause to arrest Abushawish for begging for the release of the rental van. Viewing the facts in the light most favorable to the plaintiffs, Galezewski and Humphreys cannot argue that they "reasonably but mistakenly" believed they were acting lawfully when their department's policy that required them to release the vehicle to Abushawish. Accordingly, because Galezewski and Humphreys acted unlawfully under clearly established law and in violation of their own policies, there was no "arguable probable" cause to arrest Abushawish for obstruction. Therefore, Galezewski and Humphreys are not entitled to qualified immunity.

In arguing that Humphreys and Galezewski had arguable probable cause, the defendants repeat their mischaracterization of Abushawish as an unidentified and uncooperative adult male who "did not have any business being on the scene." (Def. Br., Doc. 20, p. 19.) The video evidence in this case does not allow this inference to be drawn. The officers understood that Abushawish was the renter of the van and that the van contained audio equipment that Abushawish hoped to bring to a wedding. The officers understood how important it was to Abushawish to retrieve the van. Throughout their encounters, Abushawish was cooperative with their orders and expressly did not intend to interfere with the stop and arrest of Navarro, of which he was unconcerned. Abushawish maintained a relatively measured demeanor both before and after his arrest. The defendants did not articulate any other reason for arresting Abushawish, including disorderly conduct, because there was none. Accordingly, viewing the facts in the light most favorable to Abushawish, Humphreys and Galezewski are not entitled to qualified immunity for their decision to seize the van and arrest Abushawish.

**VI. Milwaukee County Has *Monell* Liability for Failing to Train Galezewski and Humphreys.**

A local governing body may be liable for monetary damages under § 1983 if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policymaking authority. *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010), citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690. In order for a *Monell* claim to exist, there must be a causal link between the municipal policy or custom and the constitutional violation. *City of Canton Ohio v. Harris*, 489 U.S. 378, 109 S. Ct. 1197 (1989). A *Monell* claim may arise due to inadequacy of the training of its officers. *Id*. A municipality can be liable if its failure to train, supervise or discipline exhibits deliberate indifference to the constitutional rights of its inhabitants. *Id*. Deliberate indifference can be demonstrated by (1) failing to train employees to handle recurring situations that prevents an obvious potential for a constitutional violation and this failure to train results in constitutional violations or (2) by failing to provide further training after learning of pattern of constitutional violations by police. *Dunn v. City of Elgin*, *Illinois*, 347 F.3d 641, 646 (7th Cir. 2003). Deliberate indifference may take the form of an implicit policy. *Phelan v. Cook County*, 463 F.3d 773, 790 (7th Cir. 2006).

The plaintiffs contend that Milwaukee County had in place an adequate policy and procedure that would have protected Abushawish and Abu-Shawish's rights, if followed. Galezewski and Humphreys are adamant that their unlawful actions were in accordance with their training. The deputies, however, were not familiar with the department's tow policy. According to Deputy Galezewski, he was trained that he is required to seize a vehicle driven by an unlicensed or arrested driver if there is not another driver on scene at the time of the stop.

21

(PPFF at ¶¶ 110). When asked if he had any discretion to release the van to Abushawish, he replied: "not in the way I was trained." (Id. at ¶ 111.) Deputy Humphreys had a completely different understanding of the policy. Deputy Humphreys believed MCSO's policy required officers to always tow vehicles whenever a driver is arrested or unlicensed. (Id. at ¶ 115.) The defendants' expert, Captain Wronski, testified that the written tow policy did not require officers tow a vehicle if there is no responsible person present at the time of a traffic stop. (Id. at ¶ 114.) She further testified that MCSO does not have any unwritten policies or procedures. (Id. at ¶ 2.) She agreed that MCSO's purpose for having one set of written policies is to clearly set forth the expectation of its officers and to hold MCSO officers to the same standards. (Id. at ¶¶ 3-4.) That did not occur here.

Captain Wronski has held the position of training director at MCSO for four years. (DeVinney Decl., ¶ 8, Ex. 7, Wronski Depo., at 9:14-16.) In a prior role, she was a full-time instructor with MCSO's academy for two years. (Id. at 11:10-18.) Captain Wronski was identified by the defendants as the witness most knowledgeable regarding MCSO's training and procedures. (PPFF at ¶ 1.) Despite being the person most knowledgeable regarding MCSO's training, Captain Wronski could not recall whether deputies received any training in the tow procedures during the academy. (*See* DeVinney Decl., ¶ 8, Ex. 7, Wronski Depo., at 13:1-3) She does not recall that officers are otherwise provided any training on the arrest tow policy. (Id. at 36) When asked about the language of the tow policy, she does not know whether officers receive any "specific training regarding the verbiage" of the policy. (Id. at 39:8-12.) In essence, Milwaukee County cannot say what, if any, formal training, MCSO provide to its deputies regarding the tow policy. MCSO's inclusion of a policy that applies to the seizure of vehicles in the event of an arrest underscores that this is obviously a "recurring situation that presents an

obvious potential for a constitutional violation." *See City of Canton Ohio v. Harris*, 489 U.S. 378, at 388.

Viewing these facts in the light most favorable to the plaintiffs, MCSO had a policy in place to address the specific recurrent situation presented in this case but failed to train its officers, including Galezewski and Humphreys. In the defendants' own words, they were trained to believe they were required to seize the plaintiffs' property. Thus, the failure to train Galezewski and Humphreys directly resulted in the violation of the plaintiffs' rights. Accordingly, the *Monell* claim should not be dismissed.

### VII. The Plaintiffs Do Not Oppose Dismissal of Sheriff Lucas.

The plaintiffs do not oppose dismissal of the claims against Sheriff Lucas.

### VII. Punitive Damages.

As the defendants note, punitive damages are only appropriate in § 1983 actions where the defendant had a reckless or callous disregard to the federally protected rights of others. *Smith v. Wade*, 461 U.S. 30, 35, 51 (1983); *Woodward v. Correctional Medical Servs of Illinois, Inc.* 368 F.3d 917, 930 (7th Cir. 2004). Punitive damages are appropriate when (1) "the defendant actually derives satisfaction from hurting the plaintiff; or (2) "the defendant, while not having any particular desire to hurt the plaintiff, tramples on the plaintiff's rights, in a fashion that can fairly be called reckless, to accomplish his own aims." *Soderbeck v. Burnett County, Wis.* 752 F.2d 285, 289-90 (7th Cir. 1985). Viewing the facts in the light most favorable to Abushawish and Abu-Shawish, a jury could find that the deputies' choice to arrest Mutaz and tow the U-Haul van constituted reckless or callous disregard to their federally protected rights to be free from unlawful searches and seizures.

Galezewski testified under oath that he was following what he believed to be department policy when he seized the van and arrested Abushawish. (DeVinney Decl., ¶ 6, Ex. 5, Galezewski Depo., at 4:13-17.) With all due respect, a jury is unlikely to find his excuse credible. The jury will hear Galezewski say exactly why he seized Abushawish's rental vehicle: he allowed Navarro to drive the U-Haul. In seizing the van, Galezewski reiterated, over and over, that Abushawish violated his U-Haul contract by allowing Navarro to drive the van, telling him "this is on you, this ain't on me." (PPFF at ¶¶ 45, 64, 69, 72, 77, 79.) Galezewski admitted that he knows that this was not a valid reason to arrest Abushawish or seize his property. (*See* id. at ¶¶ 67-68.) The question posed is why Galezewski would seize the van if he knew that there was no basis to do so. The reason may have been suggested during Galezewski's deposition. Galezewski testified that he believes that are "moral hazards to allowing a person to escape responsibility for driving with an invalid driver's license." (Id. at ¶ 112.) In other words, Galezewski acted in a manner to punish Abushawish for Navarro's offense. Galezewski was well aware that Abushawish desperately wanted the van to be released because it would "ruin" someone else's wedding. Galezewski understood the effect of his actions when he said, "I saw the speakers. No. You are going to ruin somebody's wedding!" (Id. at ¶ 74.) A reasonable jury, viewing Galezewski's video, could conclude that Galezewski acted with reckless disregard to Abushawish's and Abu-Shawish's rights in order to accomplish his own desire to enact punishment, or, to the furthest extreme, derived a sense of moral satisfaction from seizing the vehicle from Abushawish when he desperately needed it.

For the same reasons, a reasonable jury could find that Humphreys' actions constituted a callous or reckless disregard to Abushawish's rights. Abushawish was clear about his motivations to bring the van to his father's wedding. (PPFF at ¶ 119, 122.) Humphreys had no

24

patience for Abushawish to beg for his vehicle. (*See id.*) Humphreys arrested Abushawish immediately as he returned to continue requesting his van. (Id. at ¶ 119). Humphreys, too, was aware of why Abushawish was desperate to remove the vehicle. (Id. at ¶ 119, 122.) Instead of following department policy, Humphreys knowingly joined in Galezewski's inappropriate and unlawful quest to seize the plaintiffs' property and ultimately arrest Abushawish. There should be no dispute that these deputies' actions were unlawful and in violation of their own department's policies. In other words, they knew better and acted recklessly. They also knew the effect of their actions. They knew that by seizing the van and arresting Abushawish it would ruin an innocent person's wedding night. Therefore, there exist disputes of material fact with regard to the punitive damage claims and the Court should not grant summary judgment in favor of the defendants on this claim.

## CONCLUSION

For the reasons stated herein, the Court should deny the defendants' motion for summary judgment.

Dated: January 25, 2022                **MARTIN LAW OFFICE, S.C.**

Attorney for Plaintiff(s)

*Electronically Signed by Drew J. DeVinney*

_____
Drew J. De Vinney
State Bar No. 01088576
Frankie J. Wermerskirchen
State Bar No. 01116037

ADDRESS
7801 S. Howell Ave., Ste.102
Oak Creek, WI 53154
414-856-2310 (office)
414-856-2315 (fax)
drew@martin-law-office.com
frankie@martin-law-office.com