UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MUTAZ M. ABUSHAWISH and
MHAMMAD A. ABU-SHAWISH,

    Plaintiffs,

v.

    Case No: 20-CV-1914

MILWAUKEE COUNTY, DANIEL O. HUMPHREYS,
MICHAEL GALEZEWSKI and EARNELL LUCAS,

    Defendants.

**DEFENDANTS MILWAUKEE COUNTY, DANIEL O. HUMPHREYS, MICHAEL GALEZEWSKI, AND EARNELL LUCAS' REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Milwaukee County, Daniel O. Humphreys, Michael Galezewski, and Earnell Lucas (collectively, "County Defendants"), by their attorneys, Crivello Carlson, S.C., respectfully submit the following Reply Brief in Support of Defendants' Motion for Summary Judgment.

**ARGUMENT**

Defendants incorporate herein by reference in its entirety their Response Brief in Opposition to Plaintiffs' Partial Motion for Summary Judgment against Deputies Daniel Humphreys and Michael Galezewski. (*See generally* Dkt. 27.)

**I. MUTAZ ABUSHAWISH WAS NOT WRONGFULLY SEIZED AS A MATTER OF LAW.**

    **A. Deputy Galezewski Was Not Personally Involved in the Decision to Arrest Abushawish.**

Defendants incorporate herein by reference their brief in opposition to Plaintiffs' Partial Motion for Summary Judgment regarding their argument that Deputy Galezewski was not personally involved in the decision to arrest Abushawish. (Dkt. 27 at 1-2.)

> **B. Even to the Extent Deputy Galezewski Was Involved, He Did Not Violate the Fourth Amendment As a Matter of Law Because Deputy Humphreys Undisputedly had Probable Cause to Arrest Abushawish for Obstructing an Officer.[1]**

Plaintiffs have admitted that Deputy Humphreys had probable cause to believe that Abushawish knowingly (1) obstructed an officer (2) while the officer was doing any act in an official capacity. (Dkt. 20 at 21, Pl. Br. Supp. Summ. J.) Plaintiffs further concede that Abushawish "certainly succeeded at making the impoundment and search of the van a 'more difficult' [sic] for Galezewski and Humphreys." (*Id.*) Plaintiffs also admit that Galezewksi and Humphreys are law enforcement officers and that "vehicle stops, impounding, and inventories are duties within their own employ." (*Id.*) Thus, Plaintiffs' argument that Deputies Humphreys and Galezewski did not have probable cause to arrest Abushawish rests entirely on whether the deputies were acting with lawful authority. (*Id.* at 21-22.) However, Plaintiffs have already answered this question in the affirmative in their responses to Defendants' Requests for Admissions:

> **REQUEST NO. 3:** While he was driving the U-Haul on April 27, 2019, Mario Navarro was lawfully pulled over by Deputy Michael Galezewski for a traffic violation.
>
> **RESPONSE: Admit.**

---

[1] Plaintiffs argue that Defendants present an "undeveloped" argument that Abushawish was arrested for disorderly conduct. (Dkt. 25 at 8.) This is incorrect—it is undisputed that Abushawish was arrested for obstructing and resisting an officer, pursuant to Milwaukee County Mun. Code § 63.02(5). Thus, Defendants will not respond to Plaintiffs' argument that there is no probable cause to arrest Abushawish for disorderly conduct.

**REQUEST NO. 4:** At the time Mario Navarro was pulled over by Deputy Galezewski on April 27, 2019, there was a valid warrant out for Mario Navarro's arrest.

**RESPONSE: Admit.**

**REQUEST NO. 5:** At the time Mario Navarro was pulled over by Deputy Galezewski on April 27, 2019, Mario Navarro's driver's license was suspended.

**RESPONSE: Admit.**

(Dkt. 16 at 1-2, Haggenjos Decl. ¶ 7, Ex. F, Plaintiffs' Responses to Defendants' Requests for Admission.)

Given the admissions noted above, it is undisputed that Deputy Galezewski was discharging his duties as a law enforcement officer—by lawfully stopping and subsequently arresting Navarro—at the time Abushawish initiated contact with Deputy Galezewski. (DFF ¶ 64.) Essentially, then, according to Plaintiffs' own concessions, probable cause to arrest Abushawish was established: as Plaintiffs admit, Abushawish knowingly (1) obstructed Deputies Galezewski and Humphreys (2) while Galezewski was arresting Mr. Navarro and Deputy Humphreys was conducting an inventory search of the U-Haul, and (3) both deputies were acting with lawful authority pursuant to both the lawful stop and Abushawish's obstruction. Despite Plaintiffs' attempt to distinguish their concession that Abushawish did not knowingly obstruct the stop and arrest of Navarro but rather only intended to stop the towing of the U-Haul, the evidence clearly shows that the towing of the U-Haul was part of the stop and arrest of Navarro. Deputy Galezewski testified that he towed the vehicle *because* Mr. Navarro's license was suspended, he was being arrested, and there was no one else present at the time of the stop with a valid license. (DFF ¶ 66.)

Further, not only did Abushawish enter and interfere with the scene of this undisputedly valid traffic stop and arrest two separate times, the second being in violation of orders from two

3

deputy sheriffs, he used profanities directed toward the deputies multiple times. Further, Abushawish initiated all his contact with Deputies Galezewski and Humphreys. Plaintiffs have even admitted that Abushawish made the situation more difficult for the deputies, placing Abushawish's conduct squarely within the municipal code definition of "hindering" or "in any way interfering" with an officer conducting his or her lawful duties. (Dkt. 20, Pl. Br. at 21); Milwaukee County Mun. Code § 63.05(2). Specific examples as to how Abushawish made the situation more difficult are laid out in detail in Defendants' moving brief and their Brief in Opposition to Plaintiffs' Motion for Partial Summary Judgment. (*See* dkt. 14, 27.)

Deputy Humphreys' firsthand observations of Abushawish would have led a reasonable officer in his position to believe that he and Deputy Galezewski would not be able to complete their valid traffic stop unless they removed Abushawish from the scene. (DFF ¶¶ 57-58.) At a bare minimum, Abushawish's conduct could have led Deputy Humphreys to believe that Abushawish was "hinder[ing]" or "in any way interfere[ing]" with Deputy Galezewski's valid traffic stop and arrest of Navarro. As noted above, Plaintiffs even admit as much. (Dkt. 20 at 21, Pl. Br. Supp. Summ. J.) Further, it is undisputed that Deputy Galezewski was lawfully discharging his duties as a law enforcement officer—by lawfully pulling over and arresting Navarro—at the time Abushawish initiated contact with Galezewski. (DFF ¶ 64.) Here, Deputy Humphreys reasonably interpreted that Abushawish's multiple interferences with the deputies' valid stop and subsequent arrest of Mr. Navarro were both interfering with and obstructing Deputy Galezewski's undisputedly lawful stop and subsequent arrest of Navarro. Further, Abushawish was arrested well before the tow truck arrived on scene and towed the U-Haul from the scene, which supports the deputies' position that Abushawish was interfering with the traffic stop and was subsequently arrested, rather than being arrested for interfering with the tow itself.

4

(See Defs.' Response to PFF ¶ 124.) The video actually shows that Abushawish is placed in handcuffs around fourteen minutes after the start of the video, whereas the tow truck arrives at about ELP 20:04, and the U-Haul is not actually towed from the scene until ELP 28:53. (*Id.*) Thus, the U-Haul was towed from the scene more than fourteen minutes after Abushawish was placed in handcuffs. (*Id.*)

Therefore, Deputy Humphreys undisputedly had probable cause to arrest Abushawish for disorderly conduct and resisting.

## II.  ABUSHAWISH AND ABU-SHAWISH'S PROPERTY WAS NOT WRONGFULLY SEIZED AS A MATTER OF LAW.

As an initial matter, Plaintiffs appear to group both the wrongful seizure of property claim and the alleged wrongful search as one claim and therefore one analysis. However, "the decision to impound (the "seizure") is properly analyzed as distinct from the decision to inventory (the "search")." *U.S. v. Duguay*, 93 F.3d 346 (1996). Further, Plaintiffs cannot bring a motion for summary judgment as to any allegation of an improper search of the U-Haul because Plaintiffs failed to make a claim for improper search of the U-Haul in their complaint. (*See* Dkt. 5, Compl. ¶¶ 9-12.)

Additionally, Plaintiffs' entire argument that the seizure of the U-Haul was improper appears to rely entirely on the fact that the deputies allegedly violated the Department's policy on towing pursuant to an arrest. The Seventh Circuit has "found in the Fourth Amendment context, for example, that 'the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established.'" *McCottrell v. White*, 933 F.3d 651 (7th Cir. 2019) (quoting *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006). Instead, Plaintiffs must show that the governmental seizure is unreasonable. *Belcher v. Norton*, 497 F.3d 742, 748 (7th Cir. 2007). "The 'test of

5

reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application . . . [it] requires careful attention to the facts and circumstances of each particular case.'" *Belcher*, 497 F.3d at 748 (quoting *Donovan v. City of Milwaukee*, 17 F.3d 944, 949 (7th Cir. 1994)). Determining whether the "seizure" of property was "unreasonable" requires a "balancing of governmental and private interests." *New Jersey v. T.L.O.*, 469 U.S. 325, 341 (1985).

### A. Deputy Humphreys Was Not Personally Involved in the Decision to Tow or Seize the Property.

Plaintiffs have not demonstrated that Deputy Humphreys was personally involved in the decision to seize the U-Haul and the property contained within it. Apparently, Plaintiffs argue that because Humphreys conducted an inventory of the U-Haul after the decision to tow the U-Haul was already made by Galezewski, he "participated in the seizure." (Dkt. 25 at 11.) Plaintiffs even admit that Humphreys was conducting this inventory, pursuant to Department policy. (Dkt. 25 at 11.)

Accordingly, Deputy Humphreys is entitled to judgment as a matter of law on Plaintiffs' Fourth Amendment claim related to the U-Haul vehicle and property.

### B. Neither Humphreys Nor Galezewski Violated the Fourth Amendment Because Towing the Vehicle Was Not an Unlawful Seizure.

Plaintiffs argue that Defendants violated the Department's policy in towing the U-Haul. However, the Seventh Circuit has "found in the Fourth Amendment context, for example, that 'the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established.'" *McCottrell v. White*, 933 F.3d 651 (7th Cir. 2019) (quoting *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006). What matters here is whether the seizure of the U-Haul was reasonable under the Fourth

6

Amendment. Looking at the facts, Abushawish was not present on the scene at the time of the stop nor was he a passenger of the U-Haul when it was pulled over, and deputies never had a chance to confirm his identity as the renter of the U-Haul. (Defendants' Response to Plaintiffs' Proposed Fact ¶ 12.) Deputy Galezewski's decision to tow the vehicle was made before Abushawish was present on the scene. (Dkt. 15, DFF ¶ 15.)

Further, Abushawish was not the registered owner of the vehicle, and had not given either of the deputies any opportunity to confirm that he was the renter of the U-Haul. Specifically, Deputy Galezewski testified that at 11 minutes and 6 seconds into the video he had not even identified Abushawish and that he may or may not have had a valid driver's license at the time—at no point during his deposition did Deputy Galezewski admit that he understood Abushawish was the person who had rented the U-Haul van and was responsible for it at the time of the traffic stop and subsequent towing of the vehicle. (Response to PFF ¶ 12.) Contrary to Plaintiffs' argument that Galezewski testified that he believed Abushawish was the renter of the vehicle, which is a misstatement of Galezewski's testimony, Deputy Galezewski did not remember whether he had discovered that Abushawish was the one who had rented the U-Haul at all while conducting the traffic stop. (Response to PFF ¶ 12.) Further, upon Abushawish's arrival on the scene, he parked illegally and did not attempt to explain who he was or what his purpose was, nor did he attempt to present the U-Haul contract to Deputy Galezewski at the time of his arrival. (Dkt. 15, DFF ¶¶ 11-14.) In fact, Abushawish did not explain *anything* to Deputy Galezewski, but instead immediately asked whether he could take the U-Haul without any additional information or context. (DFF ¶ 14); *see Harney v. City of Chicago*, 702 F.3d 916, 922-23 (7th Cir. 2012) ("[T]he court's inquiry is limited to what the officer knew at the time of the arrest and not what has been gained from hindsight."). Not only did Abushawish expect Deputy

7

Galezewski to immediately hand over property that was involved in a valid traffic stop and was not yet determined to be Abushawish's property, he began to argue with—and even used profanities toward—Deputy Galezewski about whether or not he could take the U-Haul. (DFF ¶¶ 16-17.) However, it was not until Abushawish was already seated in his car—after several commands from Galezewski to have a seat in his car went ignored—and Galezewski had already begun walking away from Abushawish's vehicle that Abushawish began yelling out of his driver's side window. (DFF ¶ 23.) At this point, Deputy Galezewski tells Abushawish, "Okay, now you can leave." In other words, after Galezewski had begun walking away to continue on with the traffic stop (and subsequent arrest of Navarro) Mutaz *again* interfered, necessitating Galezewski's order for him to leave the scene.

Additionally, the U-Haul was parked on private property and would have been left to the property owner to remove it. Plaintiffs argue that the determination that the removal of the U-Haul was justified because it was on private property is an incomplete recitation of the court's rationale because Abushawish was allegedly an "owner" of the vehicle. (Dkt. 20 at 23, Pls.' Br. Supp. Mot. Summ. J.) This is incorrect, however, as Abushawish was very clearly the renter of the U-Haul, not the owner. (PFF ¶¶ 26, 28.) The Seventh Circuit has previously noted that an officer could have called a rental agency of a vehicle with predictable results. *Sanford*, 806 F.3d 954 (7th Cir. 2015) ("The car-rental contract prohibited anyone from driving the car whom the contract didn't authorize to drive it, and none of the three persons in the car was authorized. The trooper could therefore have called the rental agency, alerted it to the situation, and in all probability have been asked by the agency to impound the car . . . The trooper didn't do that . . ., but the fact that he could have, with predictable results, further attenuates the defendant's claim to have been unjustifiably seized."). While U-Haul arguably allowed Abushawish to permit

8

others to drive the vehicle, it could not have allowed Abushawish to permit others to drive the vehicle who, like Navarro, could not legally drive.

Thus, as the towing of the U-Haul was properly done pursuant to the case law and the Milwaukee County Sheriff's Department's policy on towing vehicles where there is no person with a valid driver's license on scene, neither Deputy Galezewski nor Deputy Humphreys was in violation of the Fourth Amendment in ordering the tow as a matter of law.

## III. PLAINTIFFS' COMPLAINT DID NOT CLAIM AN IMPROPER SEARCH OF THE U-HAUL WAS CONDUCTED.

Plaintiffs continue to argue that the inventory of the U-Haul was an improper search. However, Plaintiffs never alleged an improper search was conducted of the U-Haul. In fact, Plaintiff never even alleged that a search took place, let alone a search that was improper. When asked through written interrogatories to identify all evidentiary support for each named Plaintiff's contention, if any, that Deputy Humphreys and Deputy Galezewski violated Plaintiffs' Fourth Amendment rights, Plaintiff made no mention of any alleged improper search, inventory or otherwise. *See* (Dkt. 16 at 6-9, Haggenjos Decl. ¶ 7, Pls.' Resp. to Defs' Requests for Admissions and Written Interrogatories to Pls.) Further, there is Seventh Circuit case law stating that an inventory search of a vehicle related to impoundment is reasonable—and therefore lawful—if done pursuant to routine and to protect the police from potential danger, protect the owner's property, and protects the police against claims of lost, stolen, or damaged property. A detailed discussion of this case law can be found in Defendants' Response Brief in Opposition to Plaintiffs' Partial Motion for Summary Judgment. (Dkt. 27 at 21-22.)

## IV. BOTH DEPUTIES ARE ENTITLED TO QUALIFIED IMMUNITY.

### A. Qualified Immunity Shields Officers Against Section 1983 Liability Even in Instances Where Officers are Reasonably Mistaken.

9

The plaintiff always bears the burden of establishing the existence of a clearly established constitutional right violated by the public official. *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015); *Clash v. Beatty*, 77 F.3d 1045, 1047 (7th Cir. 1996). "When reasonable minds could differ, in the typical summary judgment decision the balance tips in favor of the nonmovant while in the qualified immunity context the balance favors the movant." *Ellis v. Wynalda*, 999 F.2d 243, 246 n.2 (7th Cir. 1993).

### B. Deputy Humphreys is Entitled to Qualified Immunity.

First, Deputy Humphreys is entitled to qualified immunity as to Abushawish's false arrest claim. A reasonable officer in Deputy Humphreys' position—dispatched to a scene for backup to Deputy Galezewski and dealing with an unknown person who enters the scene of a valid traffic stop and arrest, not once, but twice—could have believed that Abushawish was "hinder[ing]" or "in any way interfere[ing]" with the traffic stop and arrest. In fact, Plaintiffs *concede* that Abushawish intended to stop the deputies from impounding the U-Haul. (Dkt. 25 at 6.) It is unclear how Plaintiffs expect the deputies, at the time of the incident, to have known exactly which law enforcement actions Abushawish was intentionally interfering with—apparently, Plaintiffs feel that the deputies should have known that Abushawish was only interfering with the towing of the U-Haul and not the stop and arrest of Mr. Navarro. However, the clear evidence shows that the towing of the U-Haul was *part* of the stop and subsequent arrest of Mr. Navarro. Thus, it how Plaintiffs' position is that the deputies did not have probable cause to arrest Abushawish for obstruction when he even admits to intentionally trying to prevent the officers from towing of the U-Haul, which they were doing because Mr. Navarro was being arrested and could not drive the U-Haul away from the scene.

10

The squad footage from Deputy Galezewski's squad car shows that he ordered the tow of the U-Haul—before Abushawish arrived—because Mr. Navarro's license was suspended and because there was a warrant for Mr. Navarro's arrest. (DFF ¶ 9.) At the time Abushawish arrived on scene Deputy Galezewski was alone and in the process of verifying the validity of the warrant for Mr. Navarro's arrest. (*See* DFF ¶¶ 9-12.) Despite the fact that he is actively in the middle of verifying a warrant and dealing with Mr. Navarro during the traffic stop, Abushawish comes onto the scene hot and ready for an argument, where the squad video shows more than a minute of back-and-forths between Abushawish and Deputy Galezewski with Deputy Galezewski asking Abushawish to have a seat in his car. (*See* DFF ¶¶ 13-16.) Finally, Deputy Galezewski raises his voice to, once again, tell Abushawish to have a seat in his car, to which Abushawish responds, "Don't fucking yell at me, bro." (DFF ¶ 17.)

Deputy Humphreys' firsthand observations of Abushawish could have led a reasonable officer in his position to believe that he and Deputy Galezewski would not be able to complete their valid traffic stop unless they removed Abushawish from the scene. (DFF ¶ 57.) At the very least, Humphreys' observations and interactions with Abushawish could have led reasonable a reasonable deputy in his position to believe that Abushawish had "hinder[ed]" or "in any way interfere[d]" with Deputy Galezewski's traffic stop and arrest of Navarro, as the stop and subsequent arrest encompassed the towing of the U-Haul.

Further, even to the extent Deputy Galezewski was involved in the arrest of Abushawish, he is entitled to qualified immunity for the same reasons as Deputy Humphreys. Thus, both Deputies Humphreys and Galezewski are entitled to qualified immunity regarding Plaintiff's false arrest claim.

### C. Deputy Galezewski is Entitled to Qualified Immunity.

11

Second, Deputy Galezewski is entitled to qualified immunity as to the unlawful seizure of the U-Haul claim. At the time Deputy Galezewski made the decision to tow the U-Haul and subsequently made a request for a tow truck to come to the scene, there was no person in the U-Haul or on the scene in possession of a valid driver's license. (DFF ¶ 66.) Further, Deputy Galezewski was following a Milwaukee County policy at that time, which was to tow a vehicle that was illegally parked and there was no valid driver present on the scene at the time of the valid traffic stop. (DFF ¶ 65.) Deputy Galezewski's firsthand observations of the scene and knowledge of the fact that Mr. Navarro's license was suspended and there were no other drivers present at the time could have led a reasonable officer in his position to believe that the U-Haul should be towed. Deputy Galezewski's mere refusal to cancel the tow truck after Abushawish appeared on scene and began arguing with officers did not violate clearly established law, particularly because Deputy Galezewski had to shift his focus to completing Navarro's arrest after the tow truck had been ordered as he was still the only officer on the scene at the time.

Further, as noted above, Plaintiffs are now conceding that Abushawish intentionally interfered with the towing of the U-Haul. Despite Plaintiffs' arguments that this knowing interference does not amount to probable cause to arrest Abushawish for obstructing or hindering an officer, the distinction between the towing of the U-Haul and the stop and arrest of Navarro is illogical because the towing of the U-Haul was *part* of the stop and arrest of Navarro. The squad footage from Deputy Galezewski's squad car shows that he ordered the tow of the U-Haul—before Abushawish arrived—because Mr. Navarro's license was suspended and because there was a warrant for Mr. Navarro's arrest. (DFF ¶ 9.) At the time Abushawish arrived on scene Deputy Galezewski was alone and in the process of verifying the validity of the warrant for Mr. Navarro's arrest. (*See* DFF ¶¶ 9-12.)

Under these circumstances, a reasonable officer in Deputy Galezewski's position could have believed that Abushawish was interfering with the stop and subsequent arrest of Navarro and thus that it was reasonable under the Fourth Amendment to continue on with the arrest of Navarro and allow the U-Haul to be towed, even after he was approached by Abushawish on scene.

Further, even to the extent Deputy Humphreys was involved in the towing of the U-Haul, he is entitled to qualified immunity for the same reasons as Deputy Galezewski. Thus, both Deputies Humphreys and Galezewski are entitled to qualified immunity regarding Plaintiff's wrongful seizure of property claim.

## V. THE *MONELL* CLAIM FAILS AS A MATTER OF LAW.

### A. Plaintiffs' *Monell* Claim Fails as a Matter of Law Because They Cannot Establish a Constitutional Deprivation.

As explained above, Plaintiffs cannot and have not proved that their constitutional rights were violated. For this reason alone, Plaintiffs' Monell claim fails as a matter of law and should be dismissed with prejudice.

### C. Milwaukee County Sheriff's Department's Training Meets Constitutional Standards and Did Not Cause a Constitutional Injury.

Here, Plaintiffs seek to hold the County liable under Section 1983 based on a failure-to-train theory. (Compl. ¶¶ 46-50.) The Seventh Circuit has instructed that plaintiffs "must demonstrate that the 'deliberate action attributable to [the municipality] itself is the "moving force"' behind the deprivation of [the plaintiff's] constitutional rights." *Johnson v. Cook County*, 526 F. App'x 692, 695 (7th Cir. 2013) (quoting *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 399 (1997) (citing *Monell*, 436 U.S. at 694)).

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Relief under such a theory is available only in "limited circumstances." *Id.*; *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 599 (7th Cir. 2019); *Palmquist v. Selvik*, 111 F.3d 1332, 1344 (7th Cir. 1997). In kind, failure-to-train "claims are subject to *rigorous* fault and causation requirements . . . ." *Ruiz-Cortez*, 931 F.3d at 599-600 (emphasis added; internal quotations and citations omitted).

"To satisfy [Section 1983], a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the [untrained] employees come into contact." *Connick*, 563 U.S. at 61 (internal quotations and citations omitted). "Only then can such a shortcoming be properly thought of as a [municipal] policy or custom that is actionable under § 1983." *Id.* (internal quotations omitted). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (internal quotations omitted).

In *Ruiz-Cortez*, the Seventh Circuit explained that evidence of other constitutional deprivations caused by the alleged lapse in training "is normally required for . . . a failure-to-train claim." *Ruiz-Cortez*, 931 F.3d at 599-600; *Connick*, 563 U.S. at 62 ("A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train."); *see also Braun v. Able*, No. 15-CV-252-JPS, 2015 WL 3904960, at *7 (E.D. Wis., June 25, 2015) ("[F]acts evidencing a pattern of similar constitutional violations by untrained employees . . . is ordinarily necessary for a *Monell* claim under that theory.") (internal quotations and citations omitted). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have

14

deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62.

In the present case, Plaintiffs have failed to produce any evidence of a pattern of similar constitutional violations by untrained employees, which is the required standard in proving a failure-to-train *Monell* claim. In fact, it appears that Plaintiffs' sole evidence in support of the failure to train claim is that Deputies Humphreys and Galezewski were "not familiar" with the department's tow policy. (Dkt. 25 at 21.) Plaintiffs further argue that Captain Wronski, in her deposition, "could not recall whether deputies received any training in the tow procedures during the academy." (*Id*. at 22.) However, simply being unable to recall training specific policies does not amount to evidence of a "pattern" of similar constitutional violations by untrained employees. In fact, Plaintiffs failed to produce evidence of *any* other alleged constitutional violations by employees of the Milwaukee County Sheriff's Department that arose from a lack of training at all. A claim regarding two officers and single instance in support of an alleged failure-to-train claim is insufficient and does not establish a pattern of similar constitutional violations.

While Captain Wronski did not recall specifically whether Deputies Humphreys and Galezewski were trained on the tow policy, she did testify that when deputies are attending the academy or (if they are transferring from a different agency, an orientation) the deputies receive training in the Milwaukee County Sheriff's Department's policies and procedures. (Wronski Dep. 25:9-26:19.) The Department even takes steps to very whether a new employee has read the policies and procedures by running an online report to determine which employees have "acknowledged" the policies. (Wronski Dep. 26:20-27:3.)

Thus, based on these undisputed facts, it is clear that Milwaukee County's training satisfies the Constitution and did not cause the constitutional harm alleged here as a matter of

15

law. At minimum, no reasonable jury could find that Milwaukee County was deliberately indifferent to equipping its officers with sufficient training to address towing a vehicle incident to an arrest. Moreover, there is no evidence that prior incidents like this one revealed a lapse in a particular area of training that somehow contributed to the events as alleged here. Accordingly, the County Defendants are entitled to judgment as a matter of law as to Plaintiffs' failure-to-train *Monell* claims.

## CONCLUSION

Based on the foregoing, the County Defendants respectfully request that Plaintiffs' Motion for Partial Summary Judgment be DENIED and the Defendants' Motion for Summary Judgment be GRANTED.

Dated this 8th day of February, 2022.

By: *s/ Micaela E. Haggenjos*
SAMUEL C. HALL, JR.
State Bar No. 1045476
BENJAMIN A. SPARKS
State Bar No. 1092405
MICAELA E. HAGGENJOS
State Bar No. 1118840
Attorneys for Defendants
Milwaukee County, Deputies Michael Galezewski and Daniel Humphreys, and Sheriff Earnell Lucas
CRIVELLO CARLSON, S.C.
710 N. Plankinton Avenue, Suite 500
Milwaukee, WI 53203
Phone: (414) 271-7722
Fax: (414) 271-4438
E-mail: shall@crivellocarlson.com
E-mail: bsparks@crivellocarlson.com
E-mail: mhaggenjos@crivellocarlson.com